C. J. Kowkabany v. Commissioner.
Kowkabany v. Commissioner
Docket No. 16841.
United States Tax Court
1949 Tax Ct. Memo LEXIS 105; 8 T.C.M. (CCH) 705; T.C.M. (RIA) 49191; August 18, 1949
*105 Robert P. Smith, Esq., Bowen Bldg., Washington, D.C., for the petitioner. Edward L. Potter, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax and penalties for the taxable years ending December 31, 1942, 1943, and 1944, as follows: Deficiency
Penalty
1942
$ 8,753.76
$ 4,376.88
1943
13,832.51
6,916.26
1944
32,773.19
16,386.60
Totals
$55,359.46
$27,679.74
The issues for decision are whether petitioner received unreported income to the extent of $13,554.96 in 1942, $15,810.92 in 1943, and $36,591.93 in 1944; and whether respondent erred in the determination of 50% fraud penalties pursuant to section 293 of the Internal Revenue Code. Findings of Fact Petitioner is C. J. Kowkabany, a resident of Jacksonville, Florida. During the calendar years in question, 1942 to 1944, inclusive, petitioner owned five package liquor stores in the general vicinity of Jacksonville. During a part of these years he also owned and operated a dry goods, meat, and grocery business. In general, each store was operated by a manager. The bulk of liquor was purchased *106 by C. J. Kowkabany by check from wholesale liquor dealers. The manager was authorized to and did purchase incidentals such as supplies, beer, soda water, kerosene, and ice from cash in hand. Sales were made to individual customers for cash and check. In order to create good will, the managers cashed pay checks without charge for personnel of numerous military bases, and other businesses located in the vicinity. The purchase of merchandise was not a prerequisite to the cashing of checks. Although checks cashed, the majority being U.S. Government paychecks, sometimes exceeded $10,000 for one week in one store, no records were maintained of the number or amount of checks cashed. Sales, however, were placed in the cash register and recorded in the mechanism of the machines. Collections were made each week from each store by petitioner or someone designated by him. The cash receipts and disbursements were checked with the manager and itemized and entered on weekly "store reports." Cash was usually left on hand or retained by petitioner as a revolving fund to cash paychecks which averaged fifty to a hundred and fifty dollars each. The checks in the cash register were deposited in one *107 of petitioner's three bank accounts. The weekly store reports, showing the itemized expenditures for merchandise and expenses as well as sales, were turned over to a bookkeeper along with petitioner's bank statement, checks, and stubs. The bookkeeper then entered these figures in permanent form from which he computed petitioner's income for tax purposes. Included in this permanent record were sales, check register, cash disbursements, fixed assets, depreciation, rentals, and interest. This volume contained a record of every transaction entered into by petitioner, including the results of the disposal of the dry goods, grocery, and meat business in 1943. No balance sheet was ever prepared, although an inventory record was maintained. The method of bookkeeping employed was consistent and was practiced for many years, including the period in question. After correction for small errors, the majority of which were mechanical, the records of petitioner show: 1942
Gross sales and income
$428,888.51
Beginning Inventory
$ 65,315.32
Merchandise purchased
348,406.00
413,721.32
Ending Inventory
87,234.72
326,486.60
Miscellaneous Expenses
52,599.63
379,086.23
Net Profit per books
$ 49,802.28
1943
Gross sales and income
$753,995.15
Beginning Inventory
$ 87,234.72
Merchandise Purchased
607,039.60
694,274.32
Ending Inventory
122,534.39
571,739.93
Miscellaneous Expenses
54,339.73
626,079.66
Net Profit per books
$127,915.49
1944
Gross sales and income
$772,009.35
Beginning Inventory
$122,534.39
Merchandise Purchased
593,357.44
715,891.83
Ending Inventory
100,084.28
615,807.55
Miscellaneous Expenses
43,414.14
659,221.69
Net Profit per books
$112,787.66
*108 The taxable income as reported by petitioner was: 1942
$ 48,158.49
1943
136,861.96
1944
110,469.01
During the period involved, deposits in petitioner's three bank accounts totaled: 1942
$522,654.50
1943
927,465.44
1944
939,484.45
Upon receipt of the deficiency notice, petitioner hired a firm of accountants to determine his income. This firm spent in excess of 1,400 man hours examining the businesses of petitioner. Petitioner's entire record was verified from original records, including vendor's invoices of all purchases made by petitioner, by canceled checks, check stubs, deposit slips retained by the bank, correspondence, and any other matter bearing on the issue. Public records were examined to discover any other possible source of income. Cash receipts were compared to inventory and average mark-up. Surprise audits were made at the stores. Years, other than the ones in question, were examined. With the exception of minor and mechanical errors, the accuracy of petitioner's records are upheld. The excess of deposits over sales and other income is attributable to inter-bank transfers and to the cashing of pay roll checks which resulted *109 in a transfer of cash on hand to checks deposited in petitioner's bank account. The correct taxable income for petitioner for the taxable years is as follows: 1942, $48,524.50; 1943, $127,414.50 and 1944, $111,818.76. No part of any deficiency for any taxable year was due to fraud with intent to evade tax. Opinion KERN, Judge: The questions posed for decision in the instant proceeding are entirely factual. Based upon the entire record, which was quite voluminous, we have made the foregoing findings of fact and reach the ultimate conclusions stated therein. An extended discussion of the evidence in this opinion would be unprofitable. In our judgment petitioner has borne the burden of proof in establishing his correct taxable income for the taxable years, and the respondent has not borne his burden of proof in establishing that any deficiences with regard to any of the taxable years, was due to fraud with intent to evade the tax. Decision will be entered under Rule 50.